# UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

v.

CURTIS ALLEN YOUNG,
　　　　　　*Defendant-Appellant.*

No. 02-4465

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Jerome B. Friedman, District Judge.
(CR-01-227)

Submitted: January 31, 2003

Decided: February 11, 2003

Before WIDENER, MOTZ, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

Frank W. Dunham, Jr., Federal Public Defender, Larry W. Shelton, Supervisory Assistant Federal Public Defender, Norfolk, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Timothy R. Murphy, Special Assistant United States Attorney, Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

### OPINION

PER CURIAM:

Curtis Allen Young appeals his conviction for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (2000) (count four); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (2000) (count five); and possession of a firearm after a felony conviction in violation of 18 U.S.C. § 922(g)(1) (2000) (count six). Young does not challenge his conviction for uttering counterfeit securities in violation of 18 U.S.C. § 472 (2000) (count one), and falsely making a counterfeit security in violation of 18 U.S.C. § 471 (2000) (count two). The district court sentenced him to 205 months of imprisonment to be followed by a five-year term of supervised release. Finding no error, we affirm.

In August 2001, police obtained a warrant to search Young's residence based on information they received from Young's roommate, who had been caught trying to pass a counterfeit note. Upon executing the search warrant, police found a 9 mm handgun and ammunition on the headboard of a bed in an upstairs bedroom and a 9 mm rifle under the bed. They also found four kilograms of powder cocaine in a cooler in the laundry room, documents containing drug notations, an ink jet printer, paper cutters, and numerous counterfeit notes. Prior to trial, Young filed a motion to suppress a statement he made to police prior to being read his *Miranda** warnings concerning the location of one of the guns.

During the hearing on Young's motion to suppress, one of the officers testified that Young and two other men were present when police gained entry into the home. The officer immediately instructed Young to lie down on the floor, handcuffed him, and asked prior to frisking

---

*See Miranda v. Arizona*, 384 U.S. 436, 467 (1966).

him and prior to giving him his *Miranda* warnings, "Do you have any sharp objects, knives, needles, or guns." In response, Young stated that he had a gun on top of a bed located upstairs. Testifying to a similar, although not identical, version of events, Young described that the officer only asked him if there were any guns in the house. In response, he stated that there might be one in the bedroom on the headboard.

Young contends that the district court erred when it denied his motion to suppress his statement concerning the location of a gun. We review the district court's factual findings underlying a motion to suppress for clear error, and the district court's legal determinations de novo. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *United States v. Rusher*, 966 F.2d 868, 873 (4th Cir. 1992). When a suppression motion has been denied, we review the evidence in the light most favorable to the government. *See United States v. Seidman*, 156 F.3d 542, 547 (4th Cir. 1998). We find that the district court did not err in accepting the officer's testimony over Young's testimony.

Furthermore, the district court properly denied Young's motion to suppress. Under the public safety exception to the *Miranda* requirement, an officer's questioning of a suspect before giving a *Miranda* warning is acceptable if it relates "to an objectively reasonable need to protect the police or the public from any immediate danger associated with [a] weapon." *New York v. Quarles*, 467 U.S. 649, 659 n.8 (1984). The officer who questioned Young about weapons testified that he had reviewed Young's criminal record prior to executing the search warrant and knew that Young had been arrested for kidnapping, harassment, and assault. Young had not yet been frisked and the premises had not yet been secured when the officer asked the question. *But see United States v. Mobley*, 40 F.3d 688, 693 (4th Cir. 1994). Furthermore, even though Young was handcuffed, the officers could reasonably have believed that there might be other armed individuals present in the home, especially since two other people were with Young when the police entered the home. Finally, the questions asked were limited to the presence of weapons and did not suggest any attempt to elicit testimonial evidence. We find that under these circumstances, it was objectively reasonable for the officer to be concerned about his safety and the safety of others when he asked Young whether he had any weapons.

Young further contends that the district court erred when it denied his motion for a judgment of acquittal because there was insufficient evidence that he committed a drug trafficking offense, that he possessed a firearm, and that he possessed a firearm in furtherance of his drug trafficking activity. In reviewing the denial of a motion for a judgment of acquittal, this court must determine whether there is substantial evidence that, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt. *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982). We have reviewed the record and conclude that there was sufficient evidence to support Young's convictions.

The amount of drugs found far exceed any amount associated with personal consumption and is consistent with an intent to distribute. *See United States v. Lamarr*, 75 F.3d 964, 973 (4th Cir. 1996). Furthermore, the interior of a Black and Decker blender box located approximately three feet from the drugs contained glue imprints that were very similar to the shape of bricks in which the cocaine found on the scene had been packaged. Also, a shopping bag found in the laundry room contained plastic wrappings similar in texture and style to the plastic wrapping on the drugs. Finally, a handwritten note addressed to "Curtis" found on the same headboard where the handgun was recovered contained a message in slang that could be readily interpreted as indicating that the author desired to maintain contact with Young to facilitate drug sales in Northern Virginia, Maryland, and Washington, D.C. Thus, a rational jury could reasonably conclude that Young knew of the presence of the drugs and had the opportunity to exercise dominion and control over the drugs. *United States v. Burgos*, 94 F.3d 849, 873 (4th Cir. 1996); *United States v. Schocket*, 753 F.2d 336, 340 (4th Cir. 1985).

Young stipulated that he had been convicted of a felony and had not had his right to own or possess a firearm restored. He further stipulated that the handgun and rifle were manufactured outside of Virginia and therefore had traveled in interstate commerce. We conclude that there was sufficient evidence to find that Young had knowledge of and access to the firearms and possessed the firearms to further his drug activity. Along with the statement he made to police regarding the location of the firearms, Young also acknowledged possession of the firearms when he appeared at his bond hearing and told the magis-

trate judge that "the guns are mine." Furthermore, the weapons recovered were a fully loaded handgun and a fully loaded rifle that were found in the same residence as the cocaine. The handgun was located on top of a headboard, and the rifle was under a bed, making them readily accessible. Also, as a convicted felon, Young's possession of the weapons was illegal. Based on the evidence, a jury could reasonably conclude that a connection existed between Young's possession of the firearms and his drug trafficking activity.

Finally, Young contends that the district court erred when it refused to exclude the expert testimony of Detective Terry Dugan. The district court's decision regarding the admission of expert testimony is reviewed for an abuse of discretion. *United States v. Barsanti*, 943 F.2d 428, 432 (4th Cir. 1991). The district court, over Young's objections, qualified Detective Terry Dugan as an expert in the habits and characteristics of drug dealers. Detective Dugan testified that certain documents found in Young's residence contained notations that indicated major drug activity, and that Dugan's extensive training and experience with narcotics investigations provided a basis for his testimony. In the context of drug cases, this court has repeatedly upheld the admission of expert testimony from law enforcement officers about the methods of drug dealers. *See United States v. Hopkins*, 310 F.3d 145, 151 (4th Cir. 2002); *United States v. Gastiaburo*, 16 F.3d 582, 589 (4th Cir. 1994). Detective Dugan's testimony is similar to testimony that this court has already upheld as proper expert testimony with regard to drug activities. Therefore, we find that the district court did not err in admitting Detective Dugan's testimony.

Accordingly, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*